# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1784

_____

Sheila J. Young,                    *

                               *

        Appellant,          *

                               *   Appeal from the United States

    v.                    *   District Court for the

                               *   Southern District of Iowa.

Kenneth S. Apfel, Commissioner of    *

Social Security,            *

                               *

        Appellee.          *

_____

Submitted:  April 13, 2000
Filed: July 28, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and FRANK,[1] District Judge.

_____

WOLLMAN, Chief Judge.

Sheila J. Young appeals from the district court's[2] order affirming the denial of her request for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.  We affirm.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

Young was born on September 17, 1958. Her past relevant work is that of a general duty nurse. Young filed for disability insurance benefits in October of 1994, alleging that she could not work because of multiple sclerosis.[3] After her request was denied initially and upon review, Young appealed to an administrative law judge (ALJ), who evaluated her claim according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. §§ 404.1520(a)-(f); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step analysis). The ALJ determined that Young met the disability insured-status requirements[4] between October 15, 1983, and December 31, 1988, a period during which she had not engaged in substantial gainful activity. The ALJ also found, however, that Young's multiple sclerosis did not meet or equal the criteria found in the social security administration's Listing of Impairments. See 20 C.F.R. § 404, Subpart P, App. 1. The ALJ found that Young was unable to perform her past relevant work as a general duty nurse but possessed the residual functional capacity (RFC) to perform a limited range of sedentary work. Based on a vocational expert's response to a hypothetical question, the ALJ concluded

---

[3]Multiple sclerosis is an autoimmune disorder in which the insulating sheath surrounding nerve fibers is destroyed and replaced by scar tissue, causing nerve communication to be disrupted. Symptoms, which vary widely from person to person and from stage to stage of the disease, include muscle weakness, numbness, fatigue, loss of balance, pain, and loss of bowel and bladder control. Most often the disease remits and relapses, but it may progress without remissions or with periodic plateaus or minimal improvements. No single test confirms a diagnosis, but magnetic resonance imaging can reveal the areas of scar tissue. See Sloane-Dorland Annotated Medical-Legal Dictionary 632-33 (1987), supp. at 470-71 (1992).

[4]For insured status (the Act's "earnings requirement"), an individual must have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. See 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B).

that Young could perform a significant number of jobs in the national economy and accordingly denied Young's request for benefits.

The Appeals Council denied Young's request for further review, making the ALJ's decision the final decision of the Commissioner. Young then sought review in the district court pursuant to 42 U.S.C. § 405(g). The district court granted the Commissioner's motion for summary judgment, finding that substantial evidence supported the Commissioner's decision to deny Young disability benefits. For reversal, Young challenges the ALJ's credibility findings, RFC assessment, formulation of the hypothetical, and conclusions regarding the availability of jobs in the national economy that Young could perform.

## II.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. See Craig v. Apfel, 212 F.3d 433, 435 (8th Cir. 2000). In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See Prosch, 201 F.3d at 1012. We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. See id. Rather, if, after reviewing the record, we find that "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, we must affirm the decision'" of the Commissioner. Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

Young first argues that the ALJ failed to make credibility determinations regarding the testimony of Young and her husband and improperly discounted various

statements by Young's friends solely because they did not constitute medical evidence. We find, however, that although the ALJ did not expressly discredit Young's testimony, he did so implicitly by evaluating her testimony in light of the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), and by identifying inconsistencies between her statements and evidence in the record. Although specific articulation of credibility findings is preferable, we consider the lack thereof to constitute a deficiency in opinion-writing that does not require reversal because the ultimate finding is supported by substantial evidence in the record. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). In addition, because the same evidence also supports discounting the testimony of Young's husband, the ALJ's failure to give specific reasons for disregarding his testimony is inconsequential. See Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995) (arguable failure of ALJ specifically to discredit witness has no bearing on outcome when witness's testimony is discredited by same evidence that proves claimant's testimony not credible). Finally, we find that the ALJ did not discredit the statements of Young's friends merely on the grounds that they were not medical evidence; rather, the ALJ observed that the statements were devoid of specific information that could contradict the medical evidence regarding Young's capabilities during the relevant time period.

Second, Young contends that the Commissioner did not establish by medical evidence that Young possessed the RFC to work full-time in a competitive environment.[5] We disagree. The ALJ's opinion thoroughly discussed Young's medical

---

[5]The parties engage in a lengthy dispute over whether RFC is properly evaluated at step four or step five, and over who bears the burden of demonstrating RFC. We reiterate that RFC is determined at step four, where the burden of proof rests with the claimant. See 20 C.F.R. §§ 404.1520(a),(e),(f); 404.1545-46; 404.1560-61; Bowen, 482 U.S. at 146 n.5; Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). If the Commissioner determines that, in light of a claimant's RFC, he or she cannot perform past work, the inquiry proceeds to step five, where the burden of production shifts to the Commissioner to produce evidence of jobs available in the national economy that

treatment records from the relevant period before assessing her physical abilities. After describing Young's limitations, the ALJ noted medical reports showing that her neurological status was essentially normal and that her May 1988 magnetic resonance imaging test demonstrated no evidence of multiple sclerosis. We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work. See Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996). Moreover, Young stated in her disability report that she cooked, cleaned, did laundry, shopped, studied Russian, and exercised, and the ALJ found that during the relevant period she functioned as the primary caretaker for her home and two small children. This evidence further confirms Young's ability to work on a daily basis in the national economy. See Craig, supra, at 436 (fact that claimant "continues to engage in many normal daily living activities including driving, shopping, visiting with friends and relatives, and picking up her grandchild" supports finding of ability to work); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (grocery shopping, driving, and daily child care inconsistent with claims of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (daily activities of driving, cooking and washing dishes inconsistent with claims of disabling pain).

Young's third argument is that the hypothetical posed to the vocational expert did not adequately describe her impairments during the relevant period. Our review of the record, however, leads us to conclude that the hypothetical was supported by substantial evidence. Young contends that the ALJ failed to include limitations related to her bladder control problems and fatigue, but a hypothetical need only include impairments that are supported by the record and which the ALJ accepts as valid. See Prosch, 201 F.3d at 1015.

---

can be performed by a person with the claimant's RFC and vocational skills. See Roth, 45 F.3d at 282. The ultimate burden of persuasion to prove disability, however, always remains with the claimant. See id.

We recognize that incontinence can in some circumstances be a serious disabling condition.  See Crowley v. Apfel, 197 F.3d 194, 198-99 (5th Cir. 1999); Haynes v. Heckler, 716 F.2d 483, 485 (8th Cir. 1983).  In this case, however, although an ongoing history of bladder problems was mentioned in Young's disability report and in several doctor's examination notes, neither Young nor her husband indicated at the hearing that this problem was in any way debilitating, or even serious, during the relevant period.  Moreover, we find that the notion of fatigue was encompassed within the ALJ's statement that Young could only sit for two to four hours at a time up to eight hours per day, stand for one hour at a time up to four hours per day, and walk one block.  See Warburton v. Apfel, 188 F.3d 1047, 1050-51 (8th Cir. 1999) (although, in order to constitute substantial evidence, testimony from a vocational expert must be based on a properly phrased hypothetical, the hypothetical need not use specific diagnostic terms where other descriptive terms adequately describe a claimant's impairments).  Similarly, although the ALJ did not include findings specifically relating to Young's RFC for carrying, we find that this issue was adequately covered by the hypothetical's statement that Young was incapable of lifting more than ten pounds and by its description of her inability to use her right arm to grasp, manipulate, or lift anything repetitively above shoulder height.  See id.  Furthermore, Young's argument that the hypothetical overstated her right-arm capabilities rings hollow in light of the fact that the ALJ's description was both consistent with Young's own testimony and arguably more generous to Young than the findings of several physicians who examined her.

Last, Young argues that the vocational expert (VE) contradicted himself by suggesting that Young was limited to sedentary work but then stating that she could perform several light nursing jobs.[6]  The VE acknowledged that several of the jobs he

---

[6]Light work requires the ability to lift up to 20 pounds at a time, whereas sedentary work requires the ability to lift only 10 pounds.  See 20 C.F.R. § 404.1567(a) & (b).

recommended are classified in the Dictionary of Occupational Titles (DOT) as light jobs. However, he indicated that some of these positions as they exist in the national economy and locally could be performed at a sedentary level depending on the equipment and office setup.

Although the DOT generally controls, "[t]he DOT classifications may be rebutted . . . with VE testimony which shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'" Montgomery v. Chater, 69 F.3d 273, 276 (8th Cir. 1995) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). We find that the vocational expert adequately rebutted the DOT classifications in this case, and we note that the DOT itself states that it is not comprehensive and that individuals "demanding specific job requirements should supplement this data with local information detailing jobs within their community." DOT at xiii (quoted in Johnson, 60 F.3d at 1435); see Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996) (DOT definitions of particular jobs represent only the "'approximate maximum requirements for each position, rather than [the] range'") (quoting Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995)); cf. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (noting various approaches among the circuits to divergences between DOT classifications and VE testimony). In any event, even if the vocational expert did not successfully rebut the DOT definitions, the ALJ identified three unskilled sedentary jobs – order clerk, surveillance monitor, and telephone surveyor – Young could undisputedly perform.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.