# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1503
_____

Garland Lott, Jr.

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: September 10, 2014
Filed: November 28, 2014

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Garland Lott, Jr. applied for social security disability insurance (SSDI) benefits under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. Lott's applications were denied initially by the Commissioner, on reconsideration, and by an Administrative Law Judge (ALJ). After the Appeals Council declined to review the ALJ's decision, Lott filed a complaint in the district

court, alleging the ALJ erred by failing to order an intelligence quotient (IQ) test, evaluating Lott's intellectual capacity, and accepting a vocational expert's assessment of jobs Lott could perform. The district court affirmed the ALJ's decision. Lott appeals. Having appellate jurisdiction under 28 U.S.C. § 1291,[1] we reverse and remand.

## I.    BACKGROUND

In his initial application, Lott claimed disability due to insulin-dependent diabetes, hypertension, and a "mental disord[er]." Clinical psychologist Stephen P. Nichols, Ph.D., diagnosed Lott with psychotic disorder, not otherwise specified; antisocial personality disorder; and mild mental retardation. Dr. Nichols did not administer an IQ test as part of the mild mental retardation diagnosis.[2]

At the hearing before the ALJ, Lott testified he was thirty-six years old and had completed tenth grade. Lott took special education classes in math and science only, even though he could read "[j]ust a little bit" when he dropped out of high school. Lott cannot read or understand newspaper articles or grocery lists—he only can read

---

[1]In the district court, the parties consented to entry of judgment by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).

[2]A diagnosis of "mild mental retardation" is associated with an "IQ level 50-55 to approximately 70." American Psychiatric Association (APA), Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed., text rev. 2000) (DSM–IV–TR); see also Hutsell v. Massanari, 259 F.3d 707, 709 n.3 (8th Cir. 2001). "The APA's . . . Diagnostic and Statistical Manual of Mental Disorders 33, 37 (5th ed. 2013) (DSM–V), replaces the term 'mental retardation' with 'intellectual disability' and removes IQ score from the diagnostic criteria . . . . In this case, however, we continue to . . . refer to the diagnosis as 'mental retardation,' in accordance with the record . . . before us." Sasser v. Hobbs, 735 F.3d 833, 843 n.4 (8th Cir. 2013). But see Hall v. Florida, 572 U.S. ___, ___, 134 S. Ct. 1986, 1990 (2014) (using the term "'intellectual disability' to describe the identical phenomenon" as "mental retardation").

"little small words." Lott cannot count the change given from a dollar bill. He passed the test to obtain a driver's license on the third try with the help of another person who read the test aloud. Lott has worked as a short-order cook at a truck stop and as a construction laborer. After Lott testified, the ALJ formulated Lott's residual functional capacity (RFC), and a vocational expert (VE) testified that a person with Lott's RFC would not be able to perform his past relevant work, but would be able to work other available jobs.

> Following the hearing, the ALJ issued a decision

> employ[ing] the familiar five-step process to determine whether an individual is disabled: . . . 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work.

Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (internal quotation omitted); see 20 C.F.R. §§ 404.1520(a), 416.920(a). At Step 1, the ALJ found Lott had "not engaged in substantial gainful [work] activity since . . . the alleged onset date." At Step 2, the ALJ found Lott "ha[d] the following severe impairments: diabetes without complication, obesity, mild mental retardation and an unspecified psychotic disorder." At Step 3, the ALJ found Lott "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments," including listing 12.05, intellectual disability. See 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05. The ALJ stated Lott's RFC, and then, at Step 4, determined Lott could not perform his past relevant work. Finally, at Step 5, the ALJ concluded, based on the VE's testimony, Lott could perform other available jobs and was not disabled.

## II.    DISCUSSION

### A.    Standard of Review

Because the Appeals Council declined review, the ALJ's decision is the final decision of the Commissioner.  See, e.g., Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "We review de novo the District Court's affirmance of the Commissioner's denial of SSDI and SSI benefits," Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006), and "'the District Court's determination of whether substantial evidence on the record as a whole supports the ALJ's decision,'" Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009)).  "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'"  Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005) (quoting Young, 221 F.3d at 1068).

### B.    Listing 12.05C

Lott claims the ALJ erred by failing to "develop the record regarding Lott's disability under listing 12.05C for intellectual disability."  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  And "[s]tandardized intelligence test results are *essential* to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A"—i.e., listings 12.05B, C, and D. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.00D.6.b (emphasis added).  "[I]t may be reversible error for an ALJ not to order a consultative examination when, without such an examination, [s]he cannot make an informed choice."  Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986) (per curiam); see also 20 C.F.R. § 416.917 (explaining an ALJ may order additional testing if necessary to determine if the claimant is disabled).

-4-

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits *without a determination whether he actually can perform his own prior work or other work.*" Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (emphasis added). "If the claimant wins at the third step (a listed impairment), []he must be held disabled, and the case is over." Jones v. Barnhart, 335 F.3d 697, 699 (8th Cir. 2003); see 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled *without considering your age, education, and work experience.*" (Emphasis added)); Sird v. Chater, 105 F.3d 401, 403 n.6 (8th Cir. 1997) ("If the [claimant] has, as in this case, a conceded mental impairment, and in addition has a significant work-related physical impairment of function, then whether the claimant can perform other gainful activity is not relevant."). But "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" McCoy v. Astrue, 648 F.3d 605, 611-12 (8th Cir. 2011) (quoting Zebley, 493 U.S. at 530).

Listing 12.05 states, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05. "[T]he requirements in th[is] introductory paragraph are mandatory." Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006). In addition, one of four sets of requirements, A, B, C, or D, must also be satisfied. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05. Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C. "For

paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Id. § 12.00A. Thus for Lott to meet listing 12.05C, he would need the following: (1) a valid verbal, performance, or full scale IQ of 60-70; (2) an additional "severe" impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two. See Maresh, 438 F.3d at 899.

Lott does not meet the first 12.05C requirement because the record does not reflect he has ever been administered an IQ test. The ALJ did not explicitly acknowledge Lott had not had an IQ test. Dr. Nichols—and the ALJ—did find Lott has "mild mental retardation," which, according to the DSM, corresponds with an IQ in or below the 12.05C listing range ("IQ level 50-55 to approximately 70"). DSM–IV–TR 42; see also Hutsell, 259 F.3d at 709 n.3. Dr. Nichols diagnosed Lott as mildly mentally retarded by observation alone, without an IQ test to support his determination.

Lott satisfies the second 12.05C requirement. The ALJ, citing §§ 404.1520(c) and 416.920(c), found Lott "has the following severe impairments: diabetes without complication, obesity, mild mental retardation[,] and an unspecified psychotic disorder." Thus the ALJ found Lott had three "additional severe impairments."

As to the third 12.05C requirement, the ALJ did not make specific findings as to whether the record evidence supports an onset of intellectual and adaptive functioning disability before age twenty-two. The district court, addressing the issue, did err when it reasoned, "[I]t is unclear how IQ testing of Mr. Lott at age thirty-six could substantiate that he had the onset of mental retardation before age 22, which is also a requirement of the listing." Following the district court's logic, a person who has a genuine, life-long intellectual disability, but who had not had the good fortune

to be evaluated with an IQ test before the age of twenty-two, could not be found disabled. We have decided an IQ at an earlier age can be inferred. See Maresh, 438 F.3d at 900 ("True, the [claimant's IQ] score was recorded after the developmental period [at age 37], but 'a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.'" (quoting Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001))); Sird, 105 F.3d at 402 n.4 ("'[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ [has] remained relatively constant.'" (alterations in original) (quoting Luckey v. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989) (per curiam))).

In Maresh, we found evidence the claimant's "mental retardation initially manifested itself before age 22" when the claimant had a "verbal IQ score of 70 . . . at age 37," "struggled in special education classes through the ninth grade . . . then dropped out of school[, and] had trouble with reading, writing, and math." Maresh, 438 F.3d at 900. We also found Maresh "exhibited deficits in adaptive functioning at a young age" because "he had frequent fights with other children." Id. "Based on th[is] substantial evidence, the ALJ should have found that Maresh's impairment manifested itself during his developmental period." Id.

Like the claimant in Maresh, Lott was in special education classes in science and math, although apparently not in English, even though he only can read "little small words." Like Maresh, Lott did not complete high school. Like Maresh, as the ALJ noted, Lott "said he has had violent altercations in the past," specifically, "Teacher made fun of me [because] I didn't understand. I picked up a chair and beat the teacher. Went to detention center for juveniles." Dr. Nichols reported, "As a young teenager the claimant was committed to the Arkansas State Hospital after he attempted to burn down a home occupied by his sister and a cousin." Given these incidents, Dr. Nichols based his mild mental retardation diagnosis in part on Lott's "general level of adaptive functioning."

Lott claims the ALJ contradicted Dr. Nichols' findings and, in so doing, inappropriately "substitut[ed her] lay opinion for that of the expert." Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005). Dr. Nichols stated his diagnosis of mild mental retardation was "[b]ased on [Lott's] educational history, nature o[f] prior work, general level of adaptive functioning, and the results of [Lott's] mental status examination," which indicated Lott had "intellectual deficits." At Step 2, the ALJ specifically found Lott suffered from the severe impairment of mild mental retardation.

But at Step 3, the ALJ stated "that in order to satisfy 12.05, there must first be a showing of significantly sub-average general intellectual functioning with deficits in adaptive functioning. However, claimant's own account of his functioning, as well as the fact he has worked successfully much of his adult life in mainstream jobs precludes such a finding."[3] Lott claims these two findings by the ALJ—first, a severe impairment of mild mental retardation, and second, no significantly sub-average general intellectual functioning with deficits in adaptive functioning—are inconsistent. Lott argues,

> The ALJ's reasoning, if accepted, would make it practically impossible for noninstitutionalized mentally-retarded claimants to meet listing 12.05C because ALJs will nearly always be able to point to the performance of rudimentary activities of daily living—even though such activities do not, in fact, show that a person is not mentally retarded. . . . Listing 12.05C assumes that the mildly-retarded can work if their only impairment is mild mental retardation. Disability is based on mild mental retardation *plus* an additional physical or mental impairment that imposes a significant limitation on a person's ability to work.

---

[3] At the same time, the ALJ determined, "[g]iving the claimant the benefit of the doubt," "there has been no substantial gainful activity at all times relevant."

We agree.[4]

Lott's arguments support a remand to the ALJ to resolve both the internal inconsistencies in her decision and the unexplained inconsistencies with Dr. Nichols' opinion. See, e.g., Scott ex rel. Scott v. Astrue, 529 F.3d 818, 823 (8th Cir. 2008) ("Because the ALJ failed to support his finding that [the claimant] did not meet or medically equal the severity of a listed impairment, and because the record contains inconsistencies on this issue, we are unable to determine whether substantial evidence supports the ALJ's finding that [the claimant's] impairments did not meet or medically equal [the] listing."); Chunn, 397 F.3d at 672.

Unlike Maresh, Lott's IQ has not been evaluated. Without an "essential" IQ test, 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.00D.6.b, the ALJ could not make "an informed choice," Conley, 781 F.2d at 146, about whether Lott's mild mental retardation met listing 12.05C. Given the ALJ's adoption of Dr. Nichols' mild mental retardation diagnosis, the ALJ should have developed the record further by (1) ordering an IQ test to determine whether Lott met listing 12.05C[5] and (2) determining whether the record suggests Lott's intellectual and adaptive disabilities had their onset before the age of twenty-two.

---

[4]The DSM states mildly mentally retarded people "usually achieve social and vocational skills adequate for minimum self-support." DSM–IV–TR 43. Disability under listing 12.05C requires another severe impairment in addition to the intellectual disability.

[5]Even if Lott scores an IQ in the 12.05C range, 60-70, the ALJ would not be *required* to find that Lott meets the listing at Step 3. See, e.g., Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998) ("The [ALJ] is not required to accept a claimant's I.Q. scores, however, and may reject scores that are inconsistent with the record."); Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004) ("'Indeed, test results of this sort should be examined to assure consistency with daily activities and behavior.'" (quoting Clark, 141 F.3d at 1255)).

Because Lott must be afforded an IQ test and a reevaluation of his disability applications, we do not reach his other assignment of error.

## III.    CONCLUSION

We reverse and remand to the district court with directions to return this case to the Commissioner for further development of the record—IQ testing and a new hearing by an administrative law judge.  See 42 U.S.C. § 405(g); Snead, 360 F.3d at 839; Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992).

_____