GRUENDER, Circuit Judge.
Paul Scott appeals the decision of the district court[2] affirming the administrative law judge’s (“ALJ”) denial of his application for supplemental security income under Title XVI of the Social Security Act. See 42 U.S.C. § 1381-1383f. Because the decision of the ALJ is supported by substantial evidence on the record as a whole, we affirm.
*855 I. Background
Scott applied for supplemental security income in January 2013, alleging disability due to a back condition, migraine headaches, hearing loss, and a left eye injury. He alleged a disability onset date of October 15, 2012. Scott did not complete the eighth grade, but he has held jobs as an animal caretaker farm worker (a semiskilled occupation), construction worker, and power plant cleaner. Scott injured his back in a fall and eventually stopped working in 2012 due to back pain.
Scott’s claim was denied initially, upon reconsideration, and after a hearing before an ALJ. The ALJ employed the five-step evaluation process prescribed by 20 C.F.R. § 416.920(a). At step one, the ALJ considers whether the claimant is performing “substantial gainful activity,” and, if so, finds that the person is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Scott had not engaged in substantial gainful activity since the application date. At step two, the ALJ considers whether the claimant has a “severe medically determinable physical or mental impairment that meets the duration requirement.” Id. at § 416.920(a)(4)(ii). Here, the ALJ found that Scott suffered two severe impairments: borderline intellectual functioning and a back disorder. At step three, the ALJ considers whether the claimant’s severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1. Id. at § 416.920(a)(4)(iii). If so, then the ALJ must find the claimant disabled. 20 C.F.R. § 404.1520(d). At this step, the ALJ found that Scott’s impairments do not meet or equal one of the listed impairments. The ALJ considered Listing 12.05, finding that Scott did not manifest deficits in adaptive functioning prior to age twenty-two. The ALJ noted Scott’s history of attending special education classes but explained that the consultative examiners did not identify any other significant deficits. The ALJ also considered Listing 12.02, finding that Scott has only mild restrictions in daily living activities, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. The ALJ noted that Scott is able to cook, help feed his sister’s calves, do laundry, dust, drive short distances, and care for personal hygiene. Although Scott reads and writes poorly and cannot balance a checkbook, he communicates effectively, can perform simple math, requires no reminders to complete chores, and is able to focus enough to watch television three hours per day. Thus, the ALJ found Scott did not meet or equal a listed impairment.
At step four, the ALJ determines the claimant’s residual functional capacity (“RFC”) and considers whether the claimant can perform past relevant work. Id. at § 416.920(a)(4)(iv). The ALJ found that Scott has the residual functional capacity to perform medium, unskilled work. However, the work is limited to jobs with few variables, little independent judgment, and interpersonal contact incidental to the work performed. Supervision should be simple, direct, concrete, and brief, and the work cannot involve making change. Tasks should be able to be “learned and performed by rote.” The ALJ then found that Scott cannot perform past relevant work. At step five, the ALJ considers the claimant’s RFC, age, education, and work experience to determine whether the claimant can adjust to other work. Id. at § 416.920(a)(4)(v). The vocational expert testified that an individual with Scott’s RFC could work as a cleanup worker or poultry hanger, jobs existing in substantial numbers in the national economy. As a result, the ALJ found Scott not disabled and denied his application for supplemental security income. The Appeals Council denied review.
*856 Scott challenged the ALJ’s decision in the Eastern District of Arkansas pursuant to 42 U.S.C. § 405(g). The district court affirmed the ALJ’s decision, and Scott now appeals. He challenges the ALJ’s determination that he did not meet Listing 12.05C and contends that the ALJ failed to include his limitations in concentration, persistence,, or pace in the RFC hypothetical.
II. Discussion
We review the district court’s determination de novo, affirming the ALJ’s decision if it is “supported by substantial evidence on the record as a whole.” Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quotation omitted). “Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner’s conclusion.” Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (quotation marks omitted)). While we must consider evidence both supporting and detracting from the ALJ’s decision, we will not reverse “simply because some evidence may support the opposite conclusion.” Id. Rather, “[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ’s findings, the court must affirm the ALJ’s decision.” Id.
A. Listing 12.05C
First, substantial evidence supports the ALJ’s determination that Scott does not meet or equal Listing 12.05C. Listing 12.05C requires: 1) “significantly subaver-age general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22,” 2) “[a] valid verbal, performance, or full scale IQ of 60 through 70,” and 3) “a physical or other mental impairment imposing an additional and significant work-related limitation of function.” 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2013). The ALJ found and the parties do not dispute that Scott’s IQ of 63 falls within the prescribed range and that Scott has a qualifying physical limitation. Thus, the only contested question is whether Scott has demonstrated limitations in adaptive functioning that initially manifested before age twenty-two.
Substantial evidence supports the ALJ’s finding that Scott did not demonstrate adaptive function limitations. While Scott did not complete high school and has a history of attending special education classes, Scott’s work history demonstrates that he was able to maintain unskilled and semi-skilled work for multiple years.[3] Indeed, he only ceased working due to his back condition, not mental issues. See Goff, 421 F.3d at 793 (finding relevant that the claimant left work because of reasons other than the claimed disability).[4] Although Scott reads poorly, cannot balance a checkbook, and cannot manage finances or complete forms without assistance, he generally lives independently, communicates well and thinks logically, has a driver’s license, can drive and shop for groceries on a weekly basis, can perform simple math, *857 and helps feed his sister’s calves. He can cook meals, do laundry, dust, follow instructions, and does not require reminders to complete tasks. Although Scott challenges the district court’s analogy to Ash v. Colvin, 812 F.3d 686, 692 (8th Cir. 2016), Ash provides an apt comparison. Ash had a history of attending special education classes, could not pay bills or manage a checking account without assistance, and was diagnosed with mild mental retardation, but she could drive, shop, “complet[e] basic household chores and activities of daily living,” and had a “ten-year work history.”[5] Id. at 691. Thus, we found that substantial evidence supported the ALJ’s determination that Ash did not demonstrate the adaptive function limitations necessary to meet Listing 12.05C. Id. In the same way, Scott’s limitations, when considered together with Scott’s abilities, do not compel the conclusion that Scott’s condition meets or equals Listing 12.05C. See also Cheatum v. Astrue, 388 Fed. Appx. 574, 576-77 (8th Cir. 2010) (finding that an individual diagnosed with borderline intellectual functioning who “had maintained employment in semi-skilled and unskilled positions for many years” and could “perform activities of daily living and light housework, drive a car, help prepare meals, and care for her father who was suffering from Alzheimer’s” did not show deficits in adaptive functioning).
Contrary to Scott’s argument, Lott v. Colvin, 772 F.3d 546 (8th Cir. 2014), is not applicable. In Lott, the ALJ failed to have an IQ test administered and failed to “make specific findings as to whether the record evidence supports an onset of intellectual and adaptive functioning disability before age twenty-two.” Id. at 550. In this case, however, the ALJ did make specific findings regarding Scott’s adaptive functioning, finding that he did not demonstrate adaptive functioning deficits that manifested prior to age twenty-two. Accordingly, we must affirm as long as substantial evidence supports those findings, even if substantial evidence also supports the opposite conclusion. See Goff, 421 F.3d at 789. As explained above, substantial evidence supports the ALJ’s conclusion that Scott did not demonstrate the adaptive function limitations necessary to qualify under Listing 12.05C.
B. RFC Hypothetical
Second, the ALJ adequately accounted for Scott’s limitations in concentration, persistence, or pace in the RFC hypothetical. In order to constitute substantial evidence, a vocational expert’s testimony must be based on a hypothetical that captures the “concrete consequences” of the claimant’s deficiencies. Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted); Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997). Indeed, “the hypothetical question need not frame the claimant’s impairments in the specific diagnostic terms used in medical reports.” Lacroix, 465 F.3d at 889. A hypothetical question that omits the effects of concentration, persistence, or pace deficiencies that the ALJ has found is not sufficient. Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (finding a limitation to simple work insufficient to describe the effects of deficiencies in the ability to maintain regular attendance, be punctual, maintain attention and concentration, and complete a normal work week). That being said, a sufficient hypothetical need not contain much more than the hypothetical at issue in Newton. See Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997) (finding sufficient a hypothetical that included “scantly more *858 than what was included in the Newton hypothetical”).
The RFC hypothetical provided for medium, unskilled work involving “personal contact that is incidental to the work performed,” requiring “little independent judgment ... [and] simple, direct, and ... very brief’ supervision. The complexity of tasks was limited to “tasks [that] can be learned and performed by rote.” This hypothetical adequately captured the concrete consequences of Scott’s deficiencies. In describing his findings of Scott’s difficulties with respect to concentration, persistence, or pace, the ALJ noted Scott’s reading, writing, and math difficulties, as well as his history of special education and failure to finish high school. Although the ALJ noted that Scott “described a reduced attention span,” he “retains the focus necessary to watch three hours of television per day” and does not require reminders. Indeed, the ALJ noted that Scott demonstrated good concentration and persistence during consultative examinations, but that consultative examiners noted a slow pace. As a result, the ALJ concluded Scott could not perform complex tasks and accordingly crafted the RFC to limit the complexity of tasks and the duration and complexity of supervision (in addition to interpersonal and math-related limitations). Given the lack of severity the ALJ found in Scott’s concentration, persistence, or pace deficiencies, limiting the complexity of tasks to those performed by rote and requiring that instructions be brief, simple, direct, and concrete sufficiently captured the concrete consequences of Scott’s deficiencies, even if the hypothetical did not lay out the exact deficiencies with medical precision. See Lacroix, 465 F.3d at 889. Thus, the vocational expert’s testimony constitutes substantial evidence supporting the ALJ’s finding at step five.
III. Conclusion
Accordingly, substantial evidence supports the ALJ’s findings, and we affirm the order of the district court.

. The Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

. The dissent argues that Scott's work on a farm as an animal caretaker was unskilled. However, the vocational expert testified that this job is semi-skilled because it requires a worker to provide the animals with the correct amount of food and to keep records accordingly. Neither Scott's work history form nor the consultative physician’s report support the .conclusion that Scott’s farmhand work was limited exclusively to manual labor as the dissent suggests.

. Scott does not challenge the ALJ’s determination that he retains the residual functional capacity to carry on medium work despite his back condition. While Scott did claim his back condition as a disability, the back condition is not relevant to whether he suffers from adaptive function limitations.

. Notably, although Ash did work as a cashier, she required a special accommodation and could not calculate change herself. Ash, 812 F.3d at 691.