# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2340

_____

Laverne R. Chunn,                           *
                                            *
       Plaintiff - Appellant,           *
                                            *
                                            *    Appeal from the United States
     v.                                     *    District Court for the Eastern
                                            *    District of Arkansas.
Jo Anne B. Barnhart, Commissioner,          *
Social Security Administration,             *
                                            *
       Defendant -Appellee.             *

_____

Submitted: January 12, 2005
Filed:  February 11, 2005

_____

Before LOKEN, Chief Judge, and HANSEN and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

      Laverne Chunn applied for and was denied disability insurance benefits and supplemental security income. After receiving an unfavorable decision from the administrative law judge (ALJ) and being denied review by the Appeals Council, she sought judicial review of the Commissioner's determination that she was not disabled within the meaning of the Social Security Act. The district court dismissed Chunn's case with prejudice, affirming the Commissioner's decision. Chunn appeals, arguing that she meets the regulatory definition for mental retardation and that the vocational expert was asked a misleading hypothetical. We reverse and remand.

Chunn was born in 1977 and has a high school education that focused on special education and resource classes. She has worked in the past as an operator of a knitting machine in a factory and as a food preparer for a restaurant buffet. She says she was fired from the factory job because she missed too many days after becoming ill from breathing the lint produced at her workplace, and she left the restaurant job because she was bothered by morning sickness when pregnant. Chunn contends that she is disabled because she is mentally retarded and has breathing difficulties and speech problems.

Upon receiving Chunn's application, the Commissioner ordered an intellectual assessment and evaluation of adaptive functioning. Mary Ellen Ziolkow, Ph.D., met with Chunn and administered the Wechsler Adult Intelligence Scale-Revised. Chunn's responses resulted in a verbal IQ score of 54, a performance IQ score of 48, and a full scale IQ score of 46. As Dr. Ziolkow noted, this full scale score falls within the moderate retardation range of the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (DSM-IV). Dr. Ziolkow stated in her report that in her opinion Chunn did not appear very well motivated and that her test results probably underestimated her level of intellectual functioning. She concluded that Chunn probably falls in the mild retardation range. The DSM-IV considers IQ scores from 55 to 70 to be within the mild retardation range.

Dr. Ziolkow also evaluated Chunn's communication skills, social functioning, physical development, concentration, and personal responsibility. She observed that Chunn's language development and comprehension were below average. In evaluating her social functioning, Dr. Ziolkow noted that Chunn has no friends and is separated from her husband and does not know why. She lives with and cares for her two children and attends church although she is shy about it. Dr. Ziolkow also reported that Chunn cares for her own personal needs and does the cleaning, cooking, and laundry for the household by herself. Someone takes Chunn to the store, but she does her own shopping. Chunn reported that she can make change and can use a

checkbook, but her account was overdrawn and closed. In Dr. Ziolkow's assessment, Chunn's ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressure is below average to poor. Dr. Ziolkow concluded that Chunn's adaptive functioning is consistent with an IQ at the low end of the mild retardation range.

After Chunn's application was denied initially and on reconsideration, she received a hearing. The ALJ heard testimony from Chunn, who was unrepresented, and a vocational expert. Chunn testified that she cannot read well, can write "a little bit," cannot add or subtract big numbers, can count money but not "backwards," and has trouble understanding others and being understood herself. She also described respiratory problems she has had. She testified that she spends her days cleaning her home and looking for part time work at fast food restaurants while her children are in day care.

In the course of his decision the ALJ engaged in the familiar five step analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920. At the first step he found that Chunn had not engaged in substantial gainful activity after her alleged onset date of September 29, 2000. Next, he found that Chunn's impairments, which he characterized as "mild-borderline mental retardation" and "asthma well controlled," were severe within the meaning of the Social Security regulations. Third, he found that her impairments do not meet or equal one of the impairments listed in the regulations as requiring a finding of disability.

The ALJ then evaluated Chunn's residual functional capacity for use in steps four and five of the disability analysis. He concluded that she has no exertional limitations but that "on the basis of a history of borderline intellectual functioning and intermittent seasonal sinus allergies the claimant would be limited to entry-level unskilled work activity that would not expose the claimant to chemical odors or fumes." The ALJ further stated that Chunn has the ability to work well with the

public and supervisors and can make change and count money. He commented that in spite of Chunn's limited intellectual abilities, she has functioned independently in daily activities and has successfully worked at the substantial gainful level. He also noted that there has been no deterioration in Chunn's mental capacity.

The ALJ's determinations in steps four and five were based on the testimony of the vocational expert. The ALJ had described to the expert a hypothetical person with the following characteristics: borderline intellect and seasonal allergies; cannot work in extreme temperatures or with heavy chemicals, dust, or fumes; can perform simple unskilled work and read and follow simple concrete instructions; can work with the public, coworkers, and supervisors without restriction; can meet and greet and make change; and cannot do telemarketing jobs because of speech problems. The vocational expert testified that the person described could not do the work Chunn had done in the factory or restaurant. The ALJ relied on this testimony to determine at step four that Chunn could not do her past relevant work. The vocational expert also testified that the person described could work as a cafeteria attendant or cashier and that this work exists in significant numbers in the national economy. The ALJ relied on this testimony to determine at step five that Chunn is not disabled because she could perform other work in the national economy.

The Appeals Council denied Chunn's request for review of the ALJ's unfavorable decision, making it the final decision of the Commissioner. The district court affirmed the Commissioner's decision. On appeal to this court, Chunn urges reversal on two grounds. First, she contends that she is disabled under the listing for mental retardation and that the ALJ erred at step three by concluding that her impairments do not meet or equal one of the listed impairments. Second, Chunn contends that the vocational expert's testimony regarding her ability to perform other work does not constitute substantial evidence to support the ALJ's step five determination. Chunn argues that it was not proper to rely on this testimony because it was given in response to a hypothetical question which did not accurately represent

her limitations and because the jobs identified by the expert require even more ability than the hypothetical attributed to her.

We review de novo a district court's decision affirming the denial of social security benefits. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). In conducting this review, we must "determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). To determine whether the evidence is substantial, "we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Id.

Chunn's first argument is that she is disabled under listing 12.05C for mental retardation. See 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05C. Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." A claimant who is found to be mentally retarded under this listing is presumed disabled at step three without further inquiry. A claimant will be considered mentally retarded if she meets one of four sets of requirements, including the requirements contained in subsection C: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Chunn argues that she meets the IQ requirement of listing 12.05C, noting that Dr. Ziolkow assessed her IQ as being at the low end of the mild retardation range which is 55 through 70 and thus within the range identified in the listing.[1] She also

_____

[1]Chunn makes no argument that her scores as tested by Dr. Ziolkow are valid. If these scores were valid, she would be considered mentally retarded under listing

-5-

claims she has two additional and significant limitations that satisfy the second requirement of listing 12.05C. Chunn first points to her speech problems. To support the claim that she is significantly limited by her speech, she cites Dr. Ziolkow's observation that her language development and comprehension are below average, her own testimony that other people have trouble understanding her, and the ALJ's limitation in his hypothetical question to the vocational expert that Chunn cannot work as a telemarketer.

Chunn also claims to be limited by the breathing difficulties she experiences as a result of sinus problems, allergies, and asthma. She cites doctor visits, her testimony that she was fired from her job as a knitting machine operator because the lint made her sick and caused her to miss work, and the ALJ's finding that she is limited to work that would not expose her to chemical odors or fumes. Chunn asserts that whether considered alone or together, her speech problems and breathing difficulties fit this court's analysis of a significant limitation for purposes of listing 12.05C. See Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986) ("An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.").

The ALJ's decision does not mention listing 12.05C, nor does it otherwise indicate that he considered the listing to be relevant to Chunn's disability claim. His discussion of step three is quite general, saying that he had reviewed the evidence, including findings and opinions of experts, and did not find any evidence to show the existence of an impairment that meets the criteria of the impairments listed in the regulations. On appeal the Commissioner does not challenge Chunn's assertion that her speech problems and breathing difficulties pose significant work related limitations as required by listing 12.05C. The Commissioner focuses on the argument that Chunn has not shown she meets the IQ requirement of the listing.

---

12.05B, which requires "[a] valid verbal, performance, or full scale IQ of 59 or less."

The only evidence in the record that directly addresses Chunn's IQ is the evaluation and assessment prepared by Dr. Ziolkow. She did not give an opinion as to a particular IQ number, but she estimated that Chunn's IQ was within the mild retardation range. She also stated that an IQ at the low end of the mild retardation range is consistent with her assessment of Chunn's adaptive functioning. The ALJ's discussion of Dr. Ziolkow's report noted two discrepancies in it: her report mentioned Chunn's work at the restaurant but not at the factory, and it mentioned Chunn's use of medication for asthma even though there was no medical evidence for it. The ALJ did not otherwise criticize or challenge Dr. Ziolkow's evaluation and assessment. The ALJ also provided no explanation or support in the record for his characterization of Chunn's limitations as "mild-borderline retardation" or "borderline intellectual functioning."

An ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist. Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). In this case, however, the ALJ did not explicitly reject the psychologist's opinion, much less explain why her opinion should not be relied on. The Commissioner defends the ALJ's substitution of his lay opinion for that of the expert by arguing that he had to look at Chunn's activities to determine her mental capacity because she had not given her best efforts when taking the tests. This argument does not adequately consider the fact that Dr. Ziolkow also took Chunn's activities into account when forming her expert opinion. She might not have known about Chunn's past work at the factory, but that alone would not completely undercut an opinion which considered many aspects of Chunn's adaptive functioning. Moreover, the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.

We have carefully reviewed the record and cannot conclude that the decision is supported by substantial evidence on the record as a whole. The ALJ failed to

support his finding on step three that Chunn's impairments did not equal a listed impairment, and it is not clear from his decision that he even considered whether Chunn met the requirements for listing 12.05C. For these reasons, the case must be remanded for further consideration and findings, and we need not address Chunn's arguments about errors committed at step five.

Accordingly, we reverse and remand to the district court with instructions to remand the matter to the Commissioner for further proceedings consistent with this opinion.

_____