# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1796

_____

| | | |
|---|---|---|
| Viola Scott, On Behalf of | * | |
| Absalom Scott, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Michael J. Astrue, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: January 17, 2008
Filed:  June 23, 2008

_____

Before WOLLMAN, BRIGHT, and SMITH, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant, Viola Scott ("Scott"), on behalf of her minor son, Absalom Scott ("Absalom"), applied for Supplemental Social Security Benefits under Title XIX of the Social Security Act.  Scott claimed her son was disabled due to speech, learning, and behavioral problems.  The Social Security Commissioner ("Commissioner") denied Scott's claim and the district court affirmed.  Scott now appeals the district court's order affirming the Commissioner's decision and argues that substantial evidence does not support the Commissioner's conclusion that Absalom's impairments did not meet or medically equal any listed impairment. Scott argues that

substantial evidence supports a finding that Absalom's severe impairments met the listed impairment for mental retardation.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Although the record is extensive, the ALJ has failed to make findings on critical issues. We therefore must remand for further proceedings.

## I. BACKGROUND

On September 23, 2003, Scott filed an application for Supplemental Social Security Benefits on behalf of Absalom claiming that since January 1, 2002, Absalom was disabled due to learning, speech, and behavioral problems. After the Commissioner denied Scott's claim initially and on reconsideration, Scott timely filed a request for a hearing before an ALJ. On November 10, 2005, the ALJ held a hearing via video teleconference. Both Scott and Absalom testified at the hearing.

Absalom was born on December 17, 1989 and was fifteen years old on the date of the hearing. According to the evidence before the ALJ, Absalom's school reported in 1999 that he had difficulty learning and referred him to school psychologist Rita Lynne Jones ("Jones") for educational testing to determine his level of functioning. On March 10, 1999, Absalom scored a Verbal IQ of 84, Performance IQ of 75, and a Full Scale IQ of 78 on the Wechsler Intelligence Scale for Children-IIII ("WISC-III").[1] In addition, Absalom's results on the Woodcock Johnson Tests of

---

[1]The WISC-III measures general intellectual functioning. The Full Scale IQ provides a measure of general intelligence. The Verbal IQ provides a measure of verbal comprehension, including the application of verbal skills and information to the solution of new problems, ability to process verbal information, and the ability to think with words. The Performance IQ provides a measure of perceptual organization, including the ability to think in visual images and to manipulate these images with fluency and relative speed, to reason without the use of words and to interpret visual

Achievement-Revised ("WJ-R")[2] were in the "Low Average to Mental Retardation range." In light of his test results, Jones determined that under Arkansas law, Absalom qualified as learning disabled in the area of written expression.

On May 10, 2002, Jones re-tested Absalom to determine his then level of functioning. Absalom completed a WISC-III and a Wechsler Individual Achievement Test ("WIAT-II")[3]. On the WISC-III, Absalom scored a Verbal IQ of 81, Performance IQ of 70, and Full Scale IQ of 73. Absalom's scores on the WIAT-II were in the "borderline or below range in all areas." Jones reported that Absalom had "adaptive deficits" in the areas of speaking, spelling, reading and writing. Based on the test results, Jones concluded that Absalom's "academic ability [is] limited, is at the lower end of national norms for [his] age range, and is likely to lead to frequent failure and frustration in regular class." She recommended Absalom's school place him in a special education program and administer an Adaptive Behavior Evaluation Scale to determine his level of adaptive functioning.

Absalom also suffered from psychological problems. In August 2003, due to disorderly conduct, a court ordered Absalom to attend Consolidated Youth Services ("CYS"), a juvenile home. One month later, CYS discharged Absalom because he exhibited aggressive and threatening behavior. Absalom was subsequently admitted to BridgeWay Hospital for psychiatric evaluation and diagnosed with among other things, Major Depressive Disorder with Psychotic features and prescribed Risperdal

material quickly.

[2]The Woodcock Johnson Tests of Achievement measures achievement in the following areas: Basic Reading Skills; Reading Comprehension; Basic Math Skills; Math Reasoning; Basic Writing Skills; and Written Expression.

[3]The WIAT-II measures academic achievement relative to same age peers in the areas of word reading, reading comprehension, numerical operations, math reasoning, spelling, and written expression.

to control his behavior. Before his discharge from BridgeWay Hospital, Absalom underwent testing to determine, among other things, his level of intellectual functioning. Absalom's "Discharge Summary" reported that his "overall test scores," which included his 2002 WISC-III and WIAT-II test results, were "consistent with Borderline Intellectual Functioning with evidence of a Learning Disorder for written expression."

In December 2003, after Scott filed her disability claim, the Commissioner referred Absalom to Dr. Suzanne Gibbard, Ph.D. ("Dr. Gibbard"), a licensed psychologist and medical consultant for the State of Arkansas, for a mental status and adaptive function evaluation. Dr. Gibbard concluded that Absalom had two or more areas of adaptive functioning with significant limitation, but concluded that Absalom's adaptive functioning was not consistent with a diagnosis of mental retardation.

On January 23, 2006, in a written decision, the ALJ denied Scott's claim for disability benefits. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Scott's request for review. Scott then filed an appeal in District Court for the Eastern District of Arkansas. The district court affirmed the Commissioner's disability determination. This appeal followed.

## II. DISCUSSION

We review the district court's decision affirming the Commissioner's denial of benefits de novo, and will overturn the decision if "the Commissioner's conclusions lack support from substantial evidence in the record as a whole." Snead v. Barnhart, 360 F.3d 834, 836 (8th Cir. 2004). This "review is more than a search of the record for evidence supporting the [Commissioner's] findings," Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir. 2001) (internal quotations and citations omitted), and "requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner's] action."

-4-

Cooper v. Sullivan, 919 F.2d 1317, 1320 (8th Cir. 1990). Therefore, we must "consider relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion, as well as evidence that detracts from the Commissioner's decision." Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (internal citations omitted).

A child under eighteen years is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ employs a three-step sequential process to determine whether a child is disabled. First, the ALJ determines if the child is engaged in a substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the child is not working, the ALJ determines if the child has "a medically determinable impairment(s) that is severe." § 416.924(c). And third, if the ALJ finds that the child's impairment is severe, the ALJ must then determine whether the impairment or combination of impairments meets or medically equals the severity of a listed impairment described in 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 416.924(d). If the ALJ finds that the child's impairment does not meet or medically equal the severity of a listed impairment, the child may still be disabled if the ALJ determines that the impairment(s) functionally equals the severity of a listed impairment. Id. In making his disability determination, the ALJ must consider all relevant evidence in the record. § 416.924(a) ("We consider all relevant evidence in your case record when we make a determination or decision whether you are disabled."); Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) ("[T]he ALJ is not free to ignore medical evidence but rather must consider the whole record.").

In this case, at step one, the ALJ found that Absalom was not engaged in a substantial gainful activity. At step two, the ALJ determined that Absalom suffered from "severe" impairments which included: impulse control disorder, mood

disorder/depressive disorder with psychotic features, disruptive behavior disorder, learning disability in written expression and math, and articulation disorder with borderline intellectual functioning. At step three, however, the ALJ concluded that Absalom's impairments did not meet, medically equal, or functionally equal the severity of a listed impairment. On that basis, the ALJ denied Scott's claim for benefits. On appeal, Scott does not challenge the ALJ's conclusion that Absalom's impairments did not functionally equal a listed impairment. Rather, Scott contends that substantial evidence in the record supports the conclusion that Absalom met or medically equaled the listed impairment for mental retardation.

The listed impairment for mental retardation under 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.05, provides: "Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." To meet the required level of severity for mental retardation, the claimant must satisfy the requirements in A, B, C, D, E, or F of the listing. Id. Scott argues that Absalom satisfied the requirements of D, which requires, "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." § 112.05D ("listing 112.05D"). Thus, to meet listing 112.05D, the claimant must have: (1) significant subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant limitation of function. See Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006) (holding that the requirements in the introductory paragraph are mandatory). The claimant, however, does not have to be formally diagnosed with mental retardation to meet the Regulation's definition of mental retardation. Id. at 899.

In determining that Absalom's impairment did not meet or medically equal a listed impairment, the ALJ never referred to listing 112.05D. Indeed, the ALJ did not cite or reference any listing. As a general rule, we have held that an ALJ's failure to

adequately explain his factual findings is "not a sufficient reason for setting aside an administrative finding" where the record supports the overall determination. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999); see also Pepper v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003); Briggs v. Callahan, 139 F.3d 606, 607 (8th Cir. 1998). However, we have held that a remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision. See Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review); Pettit v. Apfel, 218 F.3d 901, 903-04 (8th Cir. 2000) (same).

In Chunn, for example, we reversed the district court and remanded the case for further proceedings because the ALJ's analysis was insufficient to permit adequate judicial review of the Commissioner's decision. 397 F.3d at 672. There, the applicant claimed that she was disabled due to mental retardation. Id. at 671. In finding that the applicant's impairment did not meet the listing for mental retardation, the ALJ failed to address the only evidence in the record evaluating the claimant's IQ–evidence which indicated that the claimant met the listing for mental retardation. Id. at 672. In addition, the ALJ failed to reference the listing for mental retardation or otherwise indicate that he considered the listing relevant to the disability claim. Id. at 671. In light of the ALJ's failure to adequately support his findings at step three, we could not determine whether substantial evidence supported the finding that the claimant did not meet or medically equal the listing. Id. at 672. Therefore, we remanded the case for further proceedings. Id.

The same is true here. Because the ALJ failed to support his finding that Absalom did not meet or medically equal the severity of a listed impairment, and because the record contains inconsistencies on this issue, we are unable to determine whether substantial evidence supports the ALJ's finding that Absalom's impairments did not meet or medically equal listing 112.05D. Nothing in the ALJ's decision

indicates that the ALJ considered listing 112.05D relevant to Scott's claim. The ALJ's cursory discussion on this issue only states that in reaching the conclusion that Absalom's impairments did not meet any listing, the ALJ considered "State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." The ALJ, however, does not cite or reference what reports in the record he relied upon. Moreover, the evidence in the record regarding Absalom's intellectual functioning, adaptive functioning, and IQ, contains several contradictory conclusions which the ALJ failed to resolve, let alone address.

Notwithstanding any inadequacies in the ALJ's decision, the Commissioner contends that substantial evidence in the record supports a finding that Absalom did not meet the listings's intellectual and adaptive functioning requirements. In addition, the Commissioner argues that Absalom's 2002 IQ results were invalid because on the date of the hearing they were not "sufficiently current".

With respect to Absalom's intellectual functioning, the Commissioner argues that the October 2003 "Discharge Summary" from BridgeWay Hospital, which reported Absalom's overall test scores were "consistent with Borderline Intellectual Functioning," precludes a finding that Absalom had significant subaverage intellectual functioning. The Commissioner's reliance on the 2003 report as "substantial evidence" on this issue is ill-placed, however.

The report's assessment of Absalom's intellectual functioning was based largely on the 2002 WISC-III IQ results that concluded Absalom's Full Scale IQ of 73 placed him in the "Borderline *or below* range of intelligence." We have never held that a diagnosis of borderline intellectual functioning, notwithstanding other contrary evidence in the record, will necessitate a finding that the claimant does not have subaverage intellectual functioning. Indeed, Absalom's 1999 and 2002 education evaluations support a finding that Absalom had below average intellectual

functioning: Absalom's 1999 evaluation reported achievement levels in the low average to mental retardation range, his 2002 WIAT-II results were borderline or below range in all areas, and his 2002 evaluation reported Absalom's academic ability at the "lower end of national norms for [his] age range."

Next, with respect to Absalom's adaptive functioning, the Commissioner argues that Dr. Gibbard's 2003 adaptive functioning evaluation, which concluded that Absalom's adaptive functioning was not consistent with a diagnosis of mental retardation, supports a finding that Absalom did not satisfy the listing's requisite deficits in adaptive functioning. The Commissioner, however, ignores Dr. Gibbard's statement that Absalom had "significant limitations" in two *or more* areas of adaptive functioning. We have recognized that limitations in two or more areas of adaptive behavior is a medical prerequisite for a classification of mental retardation. See Cox v. Astrue, 495 F.3d 614, 618 (8th Cir. 2007). Dr. Gibbard's report therefore contains an important contradiction–a diagnosis at odds with her observations–which the ALJ failed to address.[4] We have held that such a contradiction in a medical report alone does not require remand, but only when the record is clear and permits this Court to resolve the contradiction without further clarification. See id. As discussed, the record here is far from clear and prevents this Court from resolving, without further clarification, this significant contradiction.

Finally, the Commissioner argues that Absalom failed to satisfy the listing's IQ requirements because under the Regulations, Absalom's 2002 IQ scores were invalid because they were not sufficiently current at the time of the 2005 hearing. See 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.00D.10 ("[IQ results] must also be sufficiently

---

[4]As noted above, a formal diagnosis of mental retardation is not required to find a claimant entitled to disability benefits as the medical standard for mental retardation differs from the legal standard. Cox, 495 F.3d at 618 n.4; Maresh, 438 F.3d at 899. We discuss the medical standard for mental retardation only to illustrate an important inconsistency in Dr. Gibbard's report that the ALJ failed to address.

current for accurate assessment. . . . IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above."). Scott argues that when she filed her claim in 2003, the scores were only a year old and were therefore current. The ALJ made no findings with respect to the timeliness of the IQ results and the Regulations do not clarify whether the two-year period is measured from the date of initial filing or from the date of the hearing.

We believe, however, that in light of the unique non-adversarial nature of administrative proceedings, see Cox, 495 F.3d at 618 (noting the non-adversarial nature of administrative proceedings), it would offend principles of fairness to now conclude that Absalom's IQ scores are invalid because they were not "sufficiently current" on the date of the hearing. It is well-settled that the "ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). If the ALJ determined that Absalom's IQ results were not current on the date of the hearing, in exercising his obligation to develop the record, the ALJ should have ordered a new IQ test. We cannot fault Scott for the ALJ's failure to carry out his statutory duty to develop the record independent of the claimant's burden. We therefore reject the Commissioner's argument that the 2002 IQ scores are invalid.

In addition, we note that Absalom's 2002 WISC-III Performance IQ of 70 satisfied the IQ requirements set forth in listing 112.05D. While IQ tests are helpful in determining whether an applicant has a mental impairment, this Court has cautioned that IQ scores should be examined to assess consistency with daily activities and the ALJ may reject IQ scores "if they are inconsistent with the rest of the record." Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Here, the ALJ cited the IQ scores in his recitation of the evidence but failed to discuss the IQ scores in his finding that Absalom did not meet or medically equal a listed impairment. The ALJ also made no finding as to whether the IQ results were consistent with Absalom's daily activities.

## III. CONCLUSION

Due to inconsistencies in the record, which the ALJ failed to address, we are unable to determine whether substantial evidence supports the ALJ's finding that Absalom's impairment did not meet or medically equal listing 112.05D.  See Senne, 198 F.3d at 1067.   Furthermore, our review of the record leads us to seriously question whether the ALJ satisfied his duty to evaluate the *entire* record. Accordingly, we reverse and remand to the district court.  On remand the ALJ should specifically address whether Absalom's impairments met or medically equaled listing 112.05D.

_____