# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2780

_____

Tammy Hesseltine

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 17, 2015
Filed: August 26, 2015

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Tammy Hesseltine applied for disability insurance benefits under Title II of the Social Security Act. An administrative law judge (ALJ) found Hesseltine was not disabled because the combination of her mental and physical impairments did not meet the listed impairment under 20 C.F.R. § 404, Subp. P. App. 1, § 12.05C. The Social Security Appeals Council denied Hesseltine's request for review, and the

district court affirmed. On appeal, Hesseltine argues the ALJ failed to sufficiently address whether her impairments medically equal Listing 12.05C. We agree, and remand the case for further proceedings.

## I. Background

In 1993, when Hesseltine was eight years old, she was given IQ testing by a school psychologist.[1] Under the Wechsler Intelligence Scale for Children, she obtained a full scale IQ score of 70, a 72 in processing, and a 73 in verbal. The psychologist noted that Hesseltine was "within the Borderline range of mental functioning." The psychologist also found that Hesseltine's "adaptive behavior composite score" was a 71, which placed her in the third percentile of her peers. When Hesseltine graduated from high school in 2003, she read at a sixth grade level.

Hesseltine underwent several surgeries as a child to treat an impairment in her left leg caused by Perthes disease, a disorder that cuts off blood flow to the hip. In 2004, when Hesseltine was age 18, David Speigel, M.D., noted that there had been no changes in her hip since 2001 and that her Perthes disease was asymptomatic. Her left leg was 1.5 centimeters shorter than her right leg, and her mobility was limited by the condition.

In 2005, Roger Mraz, Ph.D., a licensed psychologist, administered a Wechsler Adult Intelligence Scale and determined that Hesseltine had a full scale IQ score of 71, a processing score of 73, and a verbal score of 74. Dr. Mraz noted that "[o]verall, the results of the intellectual assessment suggests [sic] that Tammy is functioning near the lower end of the Borderline Range, at the 3rd percentile." Dr. Mraz additionally assessed Hesseltine's adaptive behavior, based on consultations with her

---

[1]School psychologists are "acceptable medical sources" under 20 C.F.R. § 404.1513(a)(2).

aunt. Her daily living skills were low-average, in the 25th percentile, but her communication skills were "below the 0.1 percentile" due to her "low academic skills" and "borderline adaptive functioning." The assessment concluded that "Tammy should have no difficulty following simple instructions, and would probably do better on repetitive type tasks."

From 2004 to 2005, Hesseltine worked irregularly as a cook's helper in a school cafeteria. From 2005 to 2007, Hesseltine worked part-time at a laundry business with the help of a job coach. Her supervisor at the laundry indicated that Hesseltine "works better than most in the same position," that she required little supervision and sometimes had " a lot of independence," and that he "would hire her again." In 2009, Hesseltine worked briefly as a housekeeper in a casino.

In 2006, Hesseltine was diagnosed with polycystic ovarian syndrome, but after several months her symptoms resolved and she was able to manage her syndrome with medication. In 2007, C.W. Huang, M.D., gave Hesseltine a physical examination and observed limitation in flexion of her left hip and knee, "probably due to obesity." He noted that left hip pain would occur if she stood for more than one hour.

Hesseltine twisted her hip while at work in July 2009. She sought treatment, and an X-ray revealed "extensive changes consistent with Perthes disease." Her treating physician, Gregory Bell, M.D., diagnosed "acute exacerbation of left hip pain" but indicated that no MRIs or other follow up was necessary and that Hesseltine "can go back to work in a week like she is planning to do."

Hesseltine completed a function report form in 2007, and again in 2012. She indicated that she lived with her husband, that she "prepare[d] food all the time daily," as well as "small amounts of cleaning, laundry, [and] mowing" with breaks. She reported that she went shopping for household items and food, but that she had

trouble counting change and got confused. She stated that she followed cooking recipes "Ok." She also reported that she could not walk more than a block without needing to rest and could lift a gallon of milk at a maximum.

Hesseltine's insured status expired on September 30, 2009. She applied for disability insurance benefits on July 28, 2010. At the request of the ALJ and Hesseltine's attorney, on January 31, 2012, Dr. Mraz met Hesseltine for a second IQ evaluation. This time her results included: a full scale IQ of 72, a processing score of 79, and a verbal score of 76. Dr. Mraz noted that "the results of the intellectual assessment indicate that Tammy is functioning near the lower end of the Borderline range." Her Global Assessment of Functioning (GAF) was assessed at 65.

Following an administrative hearing, the ALJ denied Hesseltine's claim for insurance benefits in February 2012. In reaching her decision the ALJ engaged in the familiar five step analysis outlined in 20 C.F.R. § 416.920(a)(4). At the first step she found that Hesseltine had not engaged in substantial gainful activity after January 1, 2007, the alleged onset date. Next, she found that Hesseltine suffered from the following severe impairments: borderline intellectual functioning, Perthes disease of the left hip, polycystic ovarian syndrome, and obesity. Third, she found that this combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subp. P. App. 1, including Listing 12.05C.

The ALJ then evaluated Hesseltine's residual functional capacity and concluded that through the last insured date Hesseltine could lift and carry twenty pounds occasionally and ten pounds frequently; could push and pull within the same weight restrictions; could stand or walk for two hours in an eight hour workday; could sit for six hours in an eight hour workday; could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally balance and stoop, but never kneel; could occasionally crouch, but never crawl; should avoid concentrated exposure to hazards such as heights and machinery; and could perform

only simple, routine tasks with a specific vocational preparation level of one or two. At the hearing a vocational expert testified that a hypothetical person with these limitations could perform work as an ampoule sealer, lens gauger, or final assembler. The ALJ therefore concluded that there were jobs in the national economy that Hesseltine could perform and denied her application for disability benefits.

The Appeals Council denied review of the ALJ's decision and the district court affirmed. On appeal, Hesseltine argues that her impairments "medically equal" Listing 12.05C. She maintains that the ALJ failed to provide a reviewable decision as to her equivalence findings.

## II. Discussion

"We review de novo a district court's denial of social security benefits." Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010). We must "determine whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." Id. (quotation omitted). We have defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Id. (citing Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009)).

Hesseltine argues that the ALJ erred in step three of the sequential evaluation by finding that her impairments did not satisfy the requirements of Listing 12.05C. Hesseltine was required to establish: "(1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." Phillips v. Colvin, 721 F.3d 623, 625 (8th Cir. 2013) (quoting McNamara v. Astrue, 590 F.3d 607, 610–11 (8th Cir. 2010)); see also 20 C.F.R. § 404, Subp. P, App. 1, § 12.05C. Because Hesseltine had received IQ scores

of 71 and 72, above the range of 60–70, the ALJ determined that she failed to meet the first element of Listing 12.05C.[2]

However, a finding that a claimant does not meet a given listing "does not end the inquiry." Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003). "The regulations provide that if a claimant has more than one impairment, the combined effect of the impairments will be considered." Id. The medical equivalence regulation provides:

> If you have a combination of impairments, no one of which meets a listing . . . , we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b)(3).

Instructions for determining whether a person's combination of impairments is medically equal to a given listing are outlined in the Program Operations Manual System (POMS). "Although POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." Shontos, 328 F.3d at 424. The applicable POMS guideline for Listing 12.05C provides:

---

[2]When Hesseltine was eight years old she received a full scale IQ score of 70, which would place her within the limits of Listing 12.05C. Under SSA regulations, however, this score is outdated and her more recent scores must be used for determining her IQ (which ranged from 71 to 79 from 2005 to 2012). See 20 C.F.R. § 404, Subp. P, App. 1, § 112.00(D)(1) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above.") Hesseltine does not contest this regulation.

D. Determining Medical Equivalence in Particular Situations

1. MEDICAL EQUIVALENCE AND MENTAL RETARDATION
Listing 12.05C, Mental Retardation and Autism, applies primarily to adults with significantly subaverage intellectual functioning and deficits in adaptive behavior that were initially manifested in the individual's developmental period (before age 22). As with other mental impairment categories, the focus of Listing 12.05 is on the individual's inability to perform and sustain critical mental activities of work.

* * *

c. 12.05 C

Listing 12.05 C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. *However, slightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination.* It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056 (emphasis added).

Hesseltine achieved IQ scores of 71 in 2005, and 72 in 2012—both within the 70–75 range that would render her eligible for an equivalency finding under the POMS guidelines for Listing 12.05C. In addition to her borderline intellectual functioning, the ALJ found that Hesseltine suffered from three other "severe impairments:" Perthes disease of the left hip, polycystic ovarian syndrome, and obesity. Hesseltine urges that she is especially suited for an equivalence finding because of her deficits in adaptive functioning. Dr. Mraz found that Hesseltine's "overall adaptive behavior skills were generally commensurate with her intellectual

functioning, placing her at the 1st percentile." He described her communication skills as "below the 0.1 percentile."

In the portion of the ALJ's decision addressing whether Hesseltine meets a listed impairment, the ALJ stated:

> At the hearing the claimant's representative argued that the claimant met Listing 12.05C. The severity of the claimant's mental impairment does not meet or medically equal the criteria of Listing 12.05. . . . To satisfy the "paragraph C" criteria, the claimant must have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The decision does not further discuss Listing 12.05C, nor does it address whether Hesseltine's impairments are medically equal to this listing. In Shontos, this court determined that the ALJ had erred when there was "no evidence that the ALJ considered the POMS guidelines" despite evidence that Shontos suffered from "marked disabilities that would interfere with her ability to work." Shontos, 328 F.3d at 425, 427. Shontos had a full scale IQ score of 72, placing her outside the range required by Listing 12.05C. Id. at 424. Nevertheless, she suffered from anxiety and depression to the extent that her treating medical professionals determined that her ability to perform work was severely limited. Id. at 422.

Similarly, the ALJ's decision in this case does not mention the POMS guideline for determining medical equivalence, let alone explain why Hesseltine fails to meet it. We have ruled that "a remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commission's decision." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008). Hesseltine has (1) "a valid verbal, performance, or full scale IQ score" that hovers slightly above the 60–70 range, (2) "an onset of the impairment before age 22," and (3) several other physical

impairments that impose additional work-related limitations: Perthes disease of the left hip, polycystic ovarian syndrome, and obesity. See 20 C.F.R. § 404, Subp. P, App. 1, § 12.05C. The ALJ summarily concluded that Hesseltine's combination of impairments did not medically equal the criteria of Listing 12.05C, but she did not provide the reasons for her conclusion. Without further explanation, we cannot say whether there was sufficient evidence to support her decision. See Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) (remanding to the ALJ for further proceedings because it was "not clear from his decision that he even considered whether [claimant] met the requirements for listing 12.05C"); cf. Phillips v. Colvin, 721 F.3d 623, 629 (8th Cir. 2013) (affirming ALJ's rejection of medical equivalence because Phillips did not have any "physical or mental disorders that impose additional and significant work-related limitation of function").

## III. Conclusion

We reverse the district court's judgment and remand with instructions to return the case to the Commissioner for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

To establish eligibility for social security disability benefits, Tammy Hesseltine was required to show that she met or equaled a listed impairment for intellectual disability in the governing regulations. *See* 20 C.F.R. § 404, Subp. P App. 1. The "required level of severity" for intellectual disability is met when a claimant has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. § 12.05C.

Unlike the administrative law judge in *Chunn v. Barnhart*, 397 F.3d 667, 671 (8th Cir. 2005), who did not even mention listing 12.05C, or the ALJ in *Scott ex rel.*

-9-

*Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008), who did not cite or reference any listing, the ALJ in this case expressly found that Hesseltine did not meet or equal listing 12.05C: "The severity of the claimant's medical impairment does not meet or medically equal the criteria of listing 12.05. In making this finding, the undersigned has considered whether the 'paragraph A, B, C, or D' criteria are satisfied." R. 19.

Hesseltine complains that the ALJ did not adequately explain her finding, but even the failure to address a specific listing, much less the non-binding POMS guidelines, "is not reversible error if the record supports the overall conclusion." *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *see Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 n.3 (8th Cir. 2005). That an ALJ does not elaborate on her finding that a claimant's impairments do not equal a listing does not require reversal if the record supports the ALJ's overall conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). "[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

The ALJ's decision must be supported by substantial evidence on the record as a whole—that is, less than a preponderance, but "enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). As the district court observed, the ALJ's finding is "supported by a solid credibility analysis" that included reference to evidence of Hesseltine's capacity to work.

Hesseltine's full-scale IQ scores—71 and 72 in 2005 and 2012, respectively—are above the listing's IQ range of 60 through 70. To "equal" the IQ requirement, Hesseltine must present medical findings equal in severity to that lower IQ range. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Hesseltine argues that her deficits in adaptive functioning and low scores on the Vineland Adaptive Behavior

Scales support a finding of equivalence. But according to a consultative examination performed by Dr. Roger Mraz in 2005, Hesseltine's "overall adaptive behavior skills were generally commensurate with her intellectual functioning." At another consultative examination with Dr. Mraz in 2012, Hesseltine "presented no evidence of a thought disorder or perceptual abnormalities," and denied experiencing anxiety or depression. *Cf. Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003) (relying on evidence from treating providers that claimant suffered from anxiety and depression).

Dr. Mraz concluded that Hesseltine had "a history of being a responsible worker," and that she "should have no difficulty following simple instructions," as long as she had "an employer who [understood] her cognitive and academic limitations." Hesseltine's former work supervisor at a laundry reported that she worked "better than most in the same position," required "less supervision," and demonstrated "some to a lot of independence." The supervisor also rated as "good" Hesseltine's ability to "understand and carry out simple (1 and 2 step) instructions and procedures" and to "concentrate and remain on task." In a function report, Hesseltine stated that she was able to "prepare food all the time daily," shop for food, and perform "small amounts" of cleaning, laundry, and mowing.

A reasonable mind could find the record evidence adequate to buttress the ALJ's determination that Hesseltine's impairments do not medically equal listing 12.05C. Substantial evidence on the record as a whole supports a finding that Hesseltine does not suffer from other mental disorders that temporarily lowered her IQ or rendered her equal to a person with an IQ between 60 and 70. The POMS guidelines notwithstanding, physical disorders cannot support a finding of equivalence to the IQ requirement of listing 12.05C. *See Zebley*, 493 U.S. at 530 n.8, 531; *Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013). I would therefore affirm the judgment.

_____